1734 United States v. Fernando Bolden. We'll begin with oral argument on behalf of the appellant, Ms. Moreno. Thank you, Your Honor, and may it please the court. My name is Denise Moreno, and I am here on behalf of Mr. Fernando Bolden. The Fourth Amendment exists to impose meaningful limits on the government's ability to conduct searches, and the nexus requirement is a fundamental part of that protection. It requires that police not just show probable cause that a suspect committed a crime, but it requires that they also demonstrate probable cause that evidence of that crime will be found specifically in the particular place that they are seeking to search. Is it possible that the video which showed the Mr. Bolden getting out of the car as a felon, possessing the firearm, that that was the commission of a crime that was, that there was a nexus to what was going on inside the apartment? Your Honor, I believe there's no dispute that the video showed evidence that Mr. Bolden, and established probable cause that Mr. Bolden committed a crime of unlawfully possessing a firearm. That we do not dispute. The problem is that that is not enough to have created probable cause to search the specific address, the specific home at North 42nd Street. Even understanding that the video shows Mr. Bolden entering that home unlawfully possessing a firearm, the question is, is there a reason to believe that evidence of that crime will be found in that home? And I think here there's an important distinction. A lot of the cases that the government cites regarding nexus are controlled substance offenses. For example, Yarborough, where you know, the police saw the defendant have a behavioral link between the crime and the residents, that he was coming and going from that particular residence on multiple occasions, conducting controlled buys, selling narcotics, selling controlled substances. And so there, the court specifically found that there was a nexus because, you know, seeing somebody coming and going and going back to that home immediately after conducting controlled buys, there's likely to be evidence of, you know, drug proceeds or drugs that are in that home. What we have here is a more kind of discrete offense, possession of a firearm, and the only nexus that the Warren affidavit even tried to establish is this kind of boilerplate language saying individuals engaged in criminal activity often keep and maintain store firearms in their homes. And so I think in order to have found probable cause to search the North 42nd Street home, the Warren affidavit had to have established that that was Mr. Bolden's home. And again, that's not saying categorically as a rule that the only place that police can get warrants to search is a dependent's residence. But here, that is exactly the only basis that the government provided, that law enforcement was providing in that Warren affidavit, to establish a nexus saying criminal suspects often keep firearms in their homes. It didn't say anything about in the homes of friends, in the homes of family, in the homes of loved ones, even in homes where they have entered arms previously. And so the finding about or the question of whether this Warren affidavit established that Mr. Bolden resided at this address I think is key, and it goes to the heart of whether there was probable cause for this specific address. And I do think that that kind of puts us in a different category than a lot of these, you know, nexus cases involving controlled substance offenses, where there's a kind of broader category of evidence that maybe is held in places other than people's residence. The affidavit here didn't provide that. Other circuits have held that an important fact in the in the probable cause analysis is the suspect had keys. And here we've got the video of the keys. Is the key the connection to the house, to the apartment? Your Honor, I think that there are circuit court cases out of the Ninth Circuit that the defense cited in its briefing about how even possessing keys to a residence is not enough to establish that somebody resides there, probable cause that somebody resides there. And the district court I think properly found that as well. The district court, you know, in its analysis talked about there are a lot of reasons why someone may have keys to a residence, their house sitting, their pet sitting, their watering plants, whatever it may be. But here we've got the car blocking it. He's pausing in front of the door. We see the keys initially, but then we don't see the rest of it. That's exactly correct, Your Honor. The video shows that Mr. Bolden has keys in his hand as he approaches the door. We don't dispute that, but it absolutely does not show Mr. Bolden using the keys to enter the home. And that is a key factor in the analysis on good faith because the claim in the Warren affidavit otherwise, the claim that presents, you know, speculation that Mr. Bolden used the keys to enter the home as observation, as fact, that is a misrepresentation. The video shows us that Detective Ticcioni did not have the vantage point to definitively, unequivocally say that Mr. Bolden used keys to enter the home. That was a misrepresentation. Can I ask you on... I'm sorry. Go ahead, Judge Hamilton. Is this the difference between entered the house with keys or I guess by using the keys? I mean, is this... Frank, I've had some sympathy for the hair-splitting and nitpicking comments in the lower court's opinions. Your Honor, I actually don't even think that that difference matters for whether there's a misrepresentation here. I think that there are two kind of layers of misrepresentations. The Warren affidavit says that Detective Ticcioni observed Mr. Bolden using keys, using keys to enter the home. That cannot be the case. We know from the video that Detective Ticcioni did not have the vantage point to say that, you know, unequivocally Mr. Bolden used keys to enter the home. And so that there are kind of layers to the misrepresentation. Whether that came from Detective Ticcioni saying to Officer Brooks who actually wrote that Warren affidavit, you know, whether Detective Ticcioni told Officer Brooks, yes, I saw him use the keys, that is a misrepresentation. Or whether it was Officer Brooks who misunderstood perhaps what Detective Ticcioni said. Let's say, let's assume Detective Ticcioni told Officer Brooks, I saw him enter the home using keys. Officer Brooks misunderstood that and said, you know, Detective Ticcioni saw him entering the home with actually opening the door with the keys. Officer Brooks aversed in his affidavit that he watched the surveillance video. The surveillance video shows that Detective Ticcioni could not have seen the doorknob. He could not have seen whether or not Mr. Bolden used those keys to enter. And so whether the misstatement or misrepresentation has its origins in what Detective Ticcioni relates to Officer Brooks or what Officer Brooks who watched the video and should have known watching the video that there were serious doubts as to whether Detective Ticcioni could have even seen what he claimed to see, either one of those are misrepresentations that would be enough to overcome the good faith exception. I would have thought your stronger argument to overcome, or at least to get a Franks hearing, was the point about the court records accessed by the police showing a different address for Mr. Bolden. Is it correct that the police investigators used the Wisconsin Circuit Court access database to search for Mr. Bolden? Yes, Your Honor. And that we see... And the first item that comes up is the paternity case? That is exactly correct. And it has a different address as of what... I don't have the exact date for that data, but... Did Officer Brooks know about the paternity test in the second address? Officer Brooks in his warrant affidavit averse that he conducted a Wisconsin CCAP search of Mr. Bolden. But do we know if Officer Brooks knew about the paternity test? So, Judge Hamilton is absolutely correct that when you search for Nandle Bolden's name on CCAP, the very first court record that appears is that paternity case. And that paternity case lists a different address. That paternity case was the most recent contemporaneous court record that would have appeared upon that inquiry. But if he had dug into that, the mother in question was the resident of the house in question, correct? Your Honor, I believe that the CCAP record for the paternity case would have actually showed a different address for even the mother of the child in that case at the time. But did it identify her? She is the mother of the child. And the police did find out that Ms. Johnson was the resident? There were utility records. But the paternity test, or the paternity case, doesn't establish that they were in an ongoing romantic relationship at the time. I'm curious about the police department's database about boyfriends and girlfriends. Hopefully the government will tell us about that.  And I just want to make one final point quickly before I reserve the remainder of my time. Whether or not Detective Brooks actually clicked in and looked at the paternity case, I think it is at the very least a reckless disregard for the truth. If there is an officer who is trying to write up a warrant affidavit to search, what they are purporting is the defendant's home, who admits that he did a CCAP search of Mr. Bolden, and skips the most contemporaneous recent court record that he knows would have shown a listed address for him, and doesn't engage in that very minimal investigation and that very minimal step of clicking into the link. I think that that, even on its own, would show a reckless disregard for the truth sufficient for a Frank's hearing or to overcome the warrant exception. Thank you. Thank you. We'll give you some rebuttal time, Ms. Moreno. We'll move now to argument on behalf of the appellee, Mr. Wagram. Good morning, your honors. May it please the court, counsel. Aaron Wagram on behalf of the appellee, United States of America. This case presents an example of solid police work conducted in good faith as officers followed the constitutionally prescribed path of obtaining a search warrant before searching a residence. That search then uncovered evidence of guns, drugs, and over $50,000 of proceeds and related drug paraphernalia. Milwaukee police did all of this through the development of a confidential informant who had proven reliable and had a proven track record of giving police information that led to a dozen successful search warrants and the arrest of two dozen suspects and numerous convictions. That same confidential informant told police that a street dealer named Blessed, who was armed, and drove a car with the Wisconsin license plate ARK 8038, gave the specific license plate, had approached him on the street and tried to give him a sample of cocaine. Police went from there. They searched those plates, which led back to the 42nd Street residence that was ultimately searched in this case. Now, the CI also told police that this Blessed had resided at the intersection of 43rd and Good Hope Road, which, after police checked the car license plate he gave, tied almost directly to that car, that vehicle. And Mr. Wagram, the front of that apartment building is on 42nd Street. The back of that apartment building with the parking lot is on 43rd Street, right? Correct. Yeah, they're less than, it's 0.1 miles. It's a two-minute walk. Police, after conducting the records check, then went back to the confidential informant, well, after checking the registration for the vehicle and the utilities, which traced back to Mrs. Johnson, they did a records check on Miss Johnson, which found that she was in a relationship with Mr. Bolden, who matched the physical description that the confidential informant had given them. The police then went back, showed a picture, a booking photo of Mr. Bolden to the confidential informant, and he confirmed that Mr. Bolden was Blessed, who had approached him on the street and offered him a sample of cocaine. Could you tell us anything about these police records that let them link the two? Your Honor, I'm in the same boat you are. I was in counsel below. I have just the affidavit in front of me. I can see there's not much description of these police records in the affidavit. But I think the key point on that is the corroboration of the information from other independent sources in this case. So we have the police records that connect Miss Johnson and Mr. Bolden. Separate and apart from that, we have this confidential informant saying, hey, Mr. Bolden was driving this vehicle, and it turns out that vehicle is registered to Mrs. Johnson. And then thirdly, we have, as the Court is aware, Detective Tisione sees Mr. Bolden entering a house where the utilities are registered to Miss Johnson in her name at 9.45 a.m. with a set of keys. So you have kind of three independent sources of information linking Mr. Bolden to Miss Johnson to this residence. So while I think this would be a much different case if all we had was police records, he lives here, and that's it. But we have kind of three strands of the cord here, independent pieces of evidence that all tie Mr. Bolden to this residence, above and beyond the fact that this is the actual location where police saw Mr. Bolden commit the crime. Mr. Weigrin, can I ask you a question about the scope of the appeal? And I'd like Ms. Moreno to answer this, too. We definitely have a dispute about whether there was probable cause and then Lee on good faith. Is the Franks issue before us? I think it was preserved by the defendant below. He asked for a Franks hearing, and the Court denied it. I think there's no need for a Franks hearing here just because there's no showing of the two elements that are required. First, you have to show a material omission or a material misrepresentation. I don't think either of the two things cited here by Athalant satisfy that. And we need some type of substantial showing of at least recklessness. And I don't think the proof in this case rises anywhere close to recklessness on that front. So a couple of questions, and I also have a question I hope Ms. Moreno will address. As I understand it, Mr. Bolden was convicted of possession of two firearms? Technically, he pled guilty to count one was the felon in possession charge. That was the gun that he was found on his body when they arrested him. He also pled guilty on count three to possession of a firearm, and it doesn't specify the firearm. That one is more closely—that's the one I believe is associated with the residence. And the question is whether there's any Fourth Amendment problem with the seizure of the gun on his person. No, I think my friend has conceded that they had probable cause to suspect him of that. And then could you address the court records, which apparently the police did consult? And the first item is this paternity case with the different address, but that does also link Mr. Bolden to Ms. Johnson. Yeah, my colleague is very confident in what the police did or did not know. I don't think we have that evidence in the record. There's no statement by anywhere in— Well, that's the kind of thing you would get into in a Franks hearing. Correct. I think the Franks hearing is not necessary here because the evidence isn't material, first of all. So the evidence, the paternity action would have showed Mr. Bolden's purported address from three months prior to the search. As Magistrate Judge Drees found in this case, the timing differential severely undermines the relevance of that. And second of all, I think had Mr. or Officer Brooks been aware of this paternity action linking Ms. Johnson and Mr. Bolden together, it would have only strengthened the probable cause here, showing a romantic relationship between the two. I mean, imagine the affidavit where it lays out, okay, Mr. Bolden lived at a separate address three months prior, but it also shows he's in a relationship with this woman who is, according to the utility records, the tenant of this home. So I don't think this comes anywhere near to be material on that front. Mr. Wigand, the red BMW in the video, that is Ms. Johnson's? So yes, that is the same car that the confidential informant identified as Mr. Bolden driving, that ARK 8038 license plate. That car is tied to Mrs. Johnson, and it's the car that you see in the video parked right in front of the door of the truck. Tied by registration, right? Pardon me? By registration? That's how police tied it to Mrs. Johnson, correct. A question about the Yarber case. Is the Yarber case stronger or weaker on the facts than this case for the government? I think Yarber is almost directly analogous here. I appreciate that every case has its own factual nuances, especially in this Fourth Amendment context. But it's Yarber, the defendant's going back to the house directly after. It's a number of times, and going back directly after the deals, right? There are at least two instances in Yarber where he's seen going to that apartment. So I'll concede we have one instance here. But I think with the confluence of factors, and again, this is a common sense test, totality of the circumstances. You've got to look at all the factors as, frankly, a reasonable layperson would. Here you've got Mr. Bolden walking into the apartment. Whether he inserts the key into the door or not, whether you can see that on the video, I don't think it's critical. The inference arises by him walking confidently to the door, opening the door, and going inside in the middle of the morning. I mean, that is the real evidentiary weight of it, that he's walking to the door with the keys. Well, isn't the greater evidentiary weight that he, in fact, entered? Correct. Regardless of how he got in. Regardless of how he got in, he walks in confidently into the apartment as if it's his own. And frankly, I think the hair-splitting description below is surely apt. Whatever – there's two pieces of information in the affidavit. There's Detective Tizioni's statement where he says he used the keys. And then there's Officer Brooks's review of the video, which he says corroborates that statement. I think that is undoubtedly accurate here. The video is corroborating what Detective Tizioni said he saw. It could have been a miscommunication on the used keys, that intricate detail, but that's the type of hyper-tacticality that the Supreme Court has encouraged courts to steer far clear of. And overall, on this case, this is – to the extent it's a close case, this court, as the court below, is supposed to pay great deference to the initial issuing magistrate judge's finding. And so on that, the government would ask that you affirm. Thank you, Mr. Wagram. Ms. Moreno, let's go back to you for rebuttal argument, two minutes. Thank you, Your Honor. I want to start, again, just by emphasizing that here, in order to find probable cause, the Warren affidavit needed to establish that Mr. Bolden not just had a connection to this residence, they needed to establish that Mr. Bolden lived at that residence, because that is the only even arguable basis for nexus that the affidavit even claimed to make, that people who unlawfully possess firearms store them in their homes. So all of the facts that the government kind of talks about, showing that perhaps Mr. Bolden had a romantic relationship with Ms. Johnson, or that he had been present in the home, or that he walked into the home, those surely show a connection to the residence. But Yarber tells us it's not enough to say that somebody engaged in a crime has a connection to the residence or has visited the residence. There needs to be something more, some more connective tissue for the nexus finding. In Yarber, that connective tissue, the nexus was based on the fact that that defendant had gone back to that residence multiple times after multiple controlled buys. That suggested that evidence of those controlled buys would be found in the home. Is the Franks issue before us on appeal? Your Honor, in the same way, so our appeal is based... I know why you rely upon Franks, and the brief is well done. I get that. But what was not clear to me is are you asking us, you know, among the other forms of relief, and, you know, send this back for a Franks hearing? Your Honor, so I think that that depends on whether this court agrees and upholds the part of the district court's decision that says the four corners of this, you know, Warren affidavit did not establish probable cause. If this court agrees with that analysis from the district court, then, you know, the Franks issue and the good faith issue are really overlapped significantly, and really the only difference that determines whether it is a good faith analysis or a Franks analysis is whether this court believes the four corners of the affidavit establish probable cause. If it does, then we're in the good faith kind of realm, which is how it's briefed, because that's what the district court found. If this court finds that there isn't, you know, or that there is probable cause on the four corners of the affidavit, then we're in the realm of Franks, but it's all the same issues. Is it correct that you're challenging only the count three gun? That's correct, Your Honor. The count one gun stands. That's correct. Okay, thank you. And count three, of course, is the 924C, which has the five-year mandatory minimum. Thank you for reminding me. It's hard to forget those mandatory minimums. Thank you, Ms. Moreno. Thank you, Mr. Wager. And the case will be taken under revisement. Thank you. Thank you.